**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KELLY J. SINICO, | : | Civil No. 1:18-CV-01259 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SALLY A. BARRY, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an action brought under the Rehabilitation Act ("RA"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"). Plaintiff, Kelly J. Sinico ("Sinico"), alleges that she was subjected to adverse employment actions by the Defendants because she was receiving in vitro fertilization treatment ("IVF") for her infertility. The case is presently before the court on two motions to dismiss filed by the Defendants. For the reasons that follow, the motions will be granted in part and denied in part.

### Factual Background and Procedural History

Sinico first filed suit in this case on June 21, 2018. (Doc. 1.) She subsequently filed an amended complaint on September 5, 2018, and a second amended complaint on December 18, 2018. (Docs. 7, 18.) On June 7, 2019, United States District Judge Yvette Kane granted Sinico leave to file a third amended complaint, which Sinico did later that day. (Docs. 33, 34.)

1

According to the allegations in the third amended complaint, Sinico began working as a juvenile probation officer with the Lebanon County probation office on October 12, 1998. (Doc. 34 ¶ 3.) She continued to work there until June 30, 2017, when she was asked to attend a meeting with the Director of Probation, Defendant Sally A. Barry ("Barry"). (*Id.* ¶ 11.) At that time, Defendant Barry stated that Sinico's "personal issues" were interfering with her work. (*Id.*) Barry then terminated Sinico's employment. (*Id.* ¶¶ 13–15.)

At the time of Sinico's termination, Barry and the other defendants were aware that Sinico was receiving IVF to treat her infertility. (*Id.* ¶¶ 8–9.) Because of Defendants' awareness of that fact, Sinico understood the reference to her "personal issues" to mean that her supervisors were unhappy with her requests for accommodations and use of leave time. (*Id.* ¶ 12.)

Sinico alleges that prior to her termination, the Defendants denied multiple requests that she made for accommodation of her IVF treatment. On May 23, 2017, Defendant Christner denied Sinico's request for sick leave to attend a fertility treatment session, instead converting the request to one for vacation leave. (*Id.* ¶¶ 59–60.) On June 5, 2017, Sinico requested accommodations for an embryo transfer she was scheduled to have on June 10, 2017. (*Id.* ¶ 65.) Specifically, Sinico informed her supervisors that she would be on bed rest for 48 hours after the transfer, that she would be limited to minimal movement for another 48 hours, and

that she needed to be given light duty or leave for another eleven days after that. (*Id.*) The next day, Defendant Penberth called Sinico into his office for a meeting. (*Id.* ¶ 66.) During that meeting, Sinico asked Penberth if she could be allowed to work in a less stressful environment for two weeks. (*Id.* ¶ 68.) Penberth denied the request and denied all but two days of the leave Sinico had requested in her June 5, 2017 request. (*Id.* ¶ 69.) Penberth stated that he needed to deny the request for leave because Defendants Christner and Whitman would be on vacation during the time for which Sinico requested leave and because Penberth and Assistant Supervisor Dowhower[1] would be at training on one of the requested days. (*Id.* ¶ 70.)

The day after Penberth denied Sinico's requests for accommodation, Penberth and Defendant Christner called Sinico for a meeting. (*Id.* ¶ 71.) Penberth and Christner told Sinico that they needed to conduct a "case review" with Sinico and then gave her a memorandum that was comprised "solely of extensive and critical comments of [Sinico's] work performance." (*Id.*)

On June 22, 2017, Sinico learned that she was pregnant and requested accommodations from Defendants Christner and Penberth in the form of a week of sick leave in July 2017. (*Id.* ¶ 76.) Neither Christner, Penberth, nor the other

---

[1] Dowhower is not named as a defendant.

Defendants responded to Sinico's request before they terminated her employment on June 30, 2017. (*Id.* ¶ 77.)

Shortly before the termination of her employment, on either June 27, 2017 or June 28, 2017, Sinico smelled strong paint fumes while she was working in her office, which resulted from renovations that the probation office was undergoing. (*Id.* ¶ 79.) Sinico complained about the fumes to Defendants Christner and Whitman and said that she was worried the fumes could harm her pregnancy. (*Id.* ¶¶ 80–81.) Christner acknowledged that she was aware of Sinico's pregnancy and directed Sinico to work in a different office with the door closed and a window open. (*Id.* ¶ 82.)

Sinico's amended complaint raises six claims. In Count I, she alleges that Defendants failed to provide reasonable accommodations in violation of the RA. (*Id.* ¶¶ 117–20.) In Count II, she alleges retaliation in violation of the RA. (*Id.* ¶¶ 121–27.) In Count III, she alleges discrimination and wrongful discharge on the basis of disability in violation of the ADA. (*Id.* ¶¶ 128–31.) In Count IV, she alleges that Defendants interfered with her ability to take FMLA leave in violation of the FMLA. (*Id.* ¶¶ 132–41.) In Count V, she alleges retaliation in violation of the FMLA. (*Id.* ¶¶ 142–46.) In Count VI, she alleges discrimination on the basis of disability in violation of the ADA. (*Id.* ¶¶ 147–57.) The third amended complaint names as Defendants Barry, Christner, Penberth, the Commonwealth of

Pennsylvania, and John C. Tylwalk ("Tylwalk"), the President Judge of the Lebanon County Court of Common Pleas, which oversees the probation department. (*Id.* at 1.) The individual defendants are sued in both their individual and official capacities. (*Id.*) Sinico seeks prospective injunctive relief in the form of reinstatement as well as various forms of monetary relief. (*Id.* at 29.)

## MOTIONS TO DISMISS

On June 27, 2019, Defendants Barry, Christner, and Penberth ("the Probation Defendants") moved to dismiss the third amended complaint. (Doc. 35.) The Probation Defendants argue that all claims against them in their individual capacities under the ADA and the RA should be dismissed because neither statute allows for liability against an individual. (Doc. 38 at 4–5.) The Probation Defendants then argue that all claims against them in their official capacities should be dismissed because they are entitled to sovereign immunity. (*Id.* at 9.) The Probation Defendants further argue that Sinico's FMLA claims should be dismissed because claims for damages and liquidated damages under the FMLA's self-care provisions are barred by the Eleventh Amendment. (*Id.* at 9– 10.) Finally, the Probation Defendants argue that the individual-capacity FMLA claims should be dismissed because Sinico has not alleged sufficient facts to state an FLMA claim upon which relief may be granted. (*Id.* at 10–11.)

Sinico opposes the Probation Defendants' motion to dismiss. She argues the Probation Defendants are not entitled to sovereign immunity as to her official-capacity claims because the Commonwealth of Pennsylvania waived sovereign immunity by accepting federal funds. (Doc. 40 at 5–6.) She further argues that her claims for individual liability under the ADA and RA should not be dismissed because official-capacity claims seeking injunctive relief are cognizable against individual defendants under the Supreme Court's holding in *Ex Parte Young*, 209 U.S. 123 (1908). (*Id.* at 6–8.) Finally, she argues that she has pleaded sufficient facts to state FMLA claims against the Probation Defendants. (*Id.* at 8–15.)

Defendants Tylwalk and the Commonwealth ("the Commonwealth Defendants") separately moved to dismiss Sinico's third amended complaint, raising several arguments for dismissal. (Doc. 36.) The Commonwealth Defendants first argue that Sinico's FMLA claims should be dismissed because states are entitled to sovereign immunity from claims under the FMLA's self-care provision. (Doc. 37 at 7–8.) The Commonwealth Defendants similarly argue that Sinico's ADA claims are barred by sovereign immunity. (*Id.* at 8–10.) Next, the Commonwealth Defendants argue that the individual-capacity ADA and RA claims against Tylwalk should be dismissed because neither statute allows for individual liability. (*Id.* at 10–11.) The Commonwealth Defendants further argue that the ADA claims against them should be dismissed because Sinico failed to

exhaust her administrative remedies before filing suit. (*Id.* at 11–13.) Additionally, the Commonwealth Defendants argue that Sinico's claim for liquidated damages under the RA should be dismissed because the RA does not allow liquidated damages. (*Id.* at 14.) Finally, the Commonwealth Defendants argue that all individual-capacity claims against Tylwalk under the FMLA should be dismissed because Sinico has not pleaded sufficient facts to state an FMLA claim upon which relief may be granted against Tylwalk. (*Id.* at 14–15.)

Sinico filed a brief in opposition to the Commonwealth Defendants' motion to dismiss on July 22, 2019. (Doc. 39.) First, she argues that the Commonwealth has waived sovereign immunity under the RA by accepting federal funds. (*Id.* at 7–10.) Second, she argues that she sufficiently pleads claims against Tylwalk in his individual capacity because he had supervisory liability for the actions of the other defendants as the President Judge of the judicial district. (*Id.* at 10–12.) Finally, she argues that she has met the requirements for an exception to the administrative exhaustion requirement under the Third Circuit's holding in *Glus v. C.G. Murphy Co.*, 629 F.2d 248 (3d Cir. 1980).

The court will analyze the Defendants' motions to dismiss below. Ultimately, both motions are granted in part and denied in part.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**DISCUSSION**

### A. Sinico's Claims Against the Individual Defendants Under the ADA and the RA

The court will first address the Defendants' argument that Sinico's ADA and RA claims against the individual defendants should be dismissed. Neither Title I of the ADA nor Section 504 of the RA allow claims against individual defendants. *See A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals." (citing *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002))); *Michalesko v. Freeland Borough*, 18 F. Supp. 3d 609, 626 (M.D. Pa. 2014) (granting individual defendants' motion to dismiss under the ADA because "the ADA does not impose individual liability").

Sinico argues that her ADA and RA claims against the individual defendants should not be dismissed under the *Ex Parte Young* doctrine. (Doc. 40 at 6–8.) The *Ex Parte Young* doctrine is an exception to the Eleventh Amendment's grant of sovereign immunity that allows a plaintiff to sue a government official in his official capacity for prospective injunctive relief. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). While this doctrine allows claims for prospective injunctive relief to proceed against individual defendants in their official capacities, it does not allow such claims to proceed against defendants in their *individual* capacities. *Id.* at 178 (noting that the *Ex Parte Young* doctrine

9

allowed a plaintiff to bring a claim against an individual defendant, "but only in his representative—not his individual—capacity").

Sinico is correct that her claims for prospective injunctive relief against the individual defendants in their official capacities should not be dismissed under the *Ex Parte Young* doctrine. *Id.* at 179. This does not, however, mean that her ADA and RA claims should survive the defendants' motions in their entirety. The *Ex Parte Young* doctrine does not allow claims to proceed against individual defendants in their individual capacities and only allows official-capacity claims to proceed to the extent that a plaintiff seeks prospective injunctive relief. *Id.* at 178.

Accordingly, Sinico's ADA and RA claims against Defendants Barry, Christner, Penberth, and Tylwalk are dismissed except to the extent that she seeks prospective injunctive relief from the Defendants in their official capacities. (*See* Doc. 34 at 29 (seeking "injunctive relief including but not limited to reinstatement").)

### B. Sovereign Immunity

The court will next analyze the Defendants' arguments that they are entitled to sovereign immunity. The Eleventh Amendment of the United States Constitution recognizes that individual states are entitled to sovereign immunity, which is "the privilege of the sovereign not to be sued without its consent." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). Under

the Eleventh Amendment, a state that has not consented to suit is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

The Eleventh Amendment bars suits not only against states, but also against agencies and entities that are "so intertwined" with the states as to be considered "arms of the state." *Karns v. Shanahan*, 879 F.3d 504, 512–13 (2018) (citing *Bowers v. NCAA*, 475 F.3d 524, 545 (3d Cir. 2007)). "A party is an 'arm of the state' for sovereign immunity purposes when 'the state is the real, substantial party in interest.'" *Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (quoting *Ford Motor Co. v. Dep't of Treasury of State of Ind.*, 323 U.S. 459, 464 (1945)). Similarly, claims against individual defendants in their official capacities may be barred by sovereign immunity because the "real party in interest is the government entity, not the named official." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017).

There are three exceptions to the Eleventh Amendment's grant of sovereign immunity. *Hollihan v. Pa. Dep't of Corr.*, 159 F. Supp. 3d 502, 510 (M.D. Pa. 2016). First, Congress may authorize suits against states through its enforcement power under the Fourteenth Amendment. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Second, states may

waive sovereign immunity by consenting to suit. *Id.* And third, plaintiffs may bring suit under the "legal fiction" of *Ex Parte Young*, 209 U.S. at 159–60, which allows a plaintiff to sue a government official in his official capacity for prospective injunctive relief. *Koslow*, 302 F.3d at 168.

In this case, the Probation Defendants argue that all official capacity claims against them are barred by sovereign immunity, while the Commonwealth Defendants argue that Sinico's FMLA and ADA claims are barred by sovereign immunity. (Doc. 38 at 9; Doc. 37 at 8–10.) Sinico argues that the Commonwealth—and by extension the individual defendants—has waived sovereign immunity by accepting federal funds. (Doc. 40 at 5–6; Doc. 39 at 7–10.)

At the outset, the court notes that under the *Ex Parte Young* doctrine, the individual defendants are not entitled to sovereign immunity as to Sinico's claims for prospective injunctive relief against them in their official capacities. *See Koslow*, 302 F.3d at 168.

As for the question of whether the Commonwealth has waived its sovereign immunity, Sinico is correct that the receipt of federal funds may constitute a waiver of sovereign immunity under the RA. *See Haybarger v. Lawrence Cty. Adult Probation & Parole*, 551 F.3d 193, 195 (3d Cir. 2008); *Koslow*, 302 F.3d at 170. The question of whether the Commonwealth receives federal funds under the RA is ultimately a question of fact that cannot be determined on a motion to

dismiss.  *E.g.*, *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 580–81 (W.D. Pa. 2019); *A.C. v. Scranton Sch. Dist.*, 191 F. Supp. 3d 375, 391 (M.D. Pa. 2016).  At this stage of litigation, Sinico's only burden is to allege that the Commonwealth receives federal funds.  *Id.*  She has met that burden here.  (*See* Doc. 34 at 41–42.)  The court therefore cannot dismiss Sinico's RA claim on the basis of sovereign immunity because she has alleged that the Commonwealth receives federal funds under the RA.  *Haybarger*, 551 F.3d at 195.

Waiver of sovereign immunity under the RA, however, does not constitute a waiver of sovereign immunity as to all claims in the case.  *See Koslow*, 302 F.3d at 172 (finding that state's acceptance of federal RA funds waived sovereign immunity as to RA claims, but not as to plaintiff's other claims).  States are entitled to sovereign immunity against claims brought under the FMLA's self-care provision.  *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 33 (2012).  States are similarly entitled to sovereign immunity against claims brought under Title I of the ADA.  *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (2005).  Because Pennsylvania has not waived this immunity, *see* 1 Pa.C.S. § 2310, Defendants are entitled to sovereign immunity as to Sinico's FMLA and ADA claims against the Commonwealth and against the individual Defendants in their official capacities, except to the extent that Sinico seeks prospective injunctive relief from the individual defendants in their official capacities.

## C. Liquidated Damages Under the RA

The court will next address the Commonwealth Defendants' argument that Sinico's claim for liquidated damages under the RA should be dismissed because that statute does not allow the recovery of liquidated damages. (Doc. 37 at 14.) The Commonwealth Defendants argue that liquidated damages are not recoverable under the RA because 42 U.S.C. § 1981a—which governs damages in cases of alleged intentional discrimination in employment—does not contain a provision allowing the recovery of liquidated damages. (*Id.*) Sinico does not address this argument in her brief opposing the Commonwealth Defendants' motion. (*See generally* Doc. 39.)

In analyzing the Commonwealth Defendants' argument that 42 U.S.C. § 1981a does not allow liquidated damages, the court begins with the text of the statute. *Monzon v. De La Roca*, 910 F.3d 92, 101 (3d Cir. 2018) ("Only when a statute is ambiguous and includes disputed language 'reasonably susceptible to different interpretations' should a court go beyond interpreting the text of a provision." (quoting *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010))). Section 1981a does not contain a provision allowing recovery of liquidated damages in cases of intentional discrimination, but also does not state that such damages are barred. *See* 42 U.S.C. § 1981a. In fact, Section 1981a states that a plaintiff "may recover compensatory and punitive damages . . . in addition to

14

any relief authorized by section 706(g) of the Civil Rights Act of 1964." Section

706(g) of the Civil Rights Act specifies that a court, upon finding that a defendant

has engaged in intentional discrimination, may order the following remedies:

> [T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice). Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 261 (codified at 42 U.S.C. §

2000e-5(g)(1)).

It is not clear from the face of Section 1981a or from the face of Section

706(g) of the Civil Rights Act that claims for liquidated damages are barred under

the RA. To begin with, Section 706(g) of the Civil Rights Act specifies that a

plaintiff may receive back pay, and the Third Circuit has suggested in dicta that

back pay may be a form of liquidated damages in certain situations. *See, e.g.*,

*Watcher v. Pottsville Area Emergency Med. Servs., Inc.*, 248 F. App'x 272, 276

(3d Cir. 2007) (noting that plaintiff could not recover back pay under ADEA's

liquidated damages provision without "a finding of discriminatory termination");

*Blum v. Witco Chem. Corp.*, 829 F.2d 367, 382 (3d Cir. 1987) ("We agree that one

purpose of a liquidated damage award is to compensate the plaintiff for the delay

in receiving back pay and benefits."). Moreover, the Commonwealth Defendants

have not cited to any controlling case law that stands for the proposition that liquidated damages are barred under the RA. Accordingly, the Commonwealth Defendants' motion to dismiss Sinico's claim for liquidated damages under the RA is denied.

### D. The Commonwealth Defendants' Failure-to-Exhaust Argument

The court will next address the Commonwealth Defendants' argument that Sinico's ADA claim should be dismissed because she failed to exhaust her administrative remedies. Given the court's above conclusions on sovereign immunity and individual claims under the ADA, Sinico's only ADA claims that remain viable for this analysis are her claims for prospective injunctive relief against the individual defendants in their official capacities. Additionally, because failure to exhaust is an affirmative defense that a defendant must plead and prove, *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997), the court will only consider whether Sinico has exhausted her administrative remedies against Defendant Tylwalk since the Probation Defendants have not argued that Sinico failed to exhaust her administrative remedies.

Before filing a complaint alleging violations of the ADA in federal court, a plaintiff must exhaust her administrative remedies. *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999). To exhaust administrative remedies, a plaintiff must follow the administrative procedures outlined in 42 U.S.C. § 2000e–5, which

requires the plaintiff to file a complaint of discrimination before the Equal

Employment Opportunity Commission ("EEOC"), and obtain a right-to-sue letter.

*Id.*; *see also Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).

Generally, a plaintiff may only bring an ADA claim against a party that was

previously named in an EEOC complaint.   *Schafer v. Bd. of Pub. Educ. Of the*

*Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 251 (3d Cir. 1990).  The Third Circuit

recognizes an exception to this rule, however, when a party that was not named in

the EEOC complaint has received notice and has a "shared commonality of

interest" with the party that was named in the EEOC complaint.  *Id.* at 252 (citing

*Glus*, 629 F.2d at 251).  Courts analyzing whether this exception applies should

consider four factors:

> 1) whether the role of the unnamed party could through reasonable
> effort by the complainant be ascertained at the time of the filing of the
> EEOC complaint; 2) whether, under the circumstances, the interests of
> a named [party] are so similar [to] the unnamed party that for purposes
> of obtaining voluntary conciliation and compliance it would be
> unnecessary to include the unnamed party in the EEOC proceedings; 3)
> whether its absence from the EEOC proceedings resulted in actual
> prejudice to the interests of the unnamed party; 4) whether the unnamed
> party has in some way represented to the complainant that its
> relationship with the complainant is to be through the named party.

*Id.* at 252 n.7 (quoting *Glus*, 629 F.2d at 251).

Here, the court concludes that Sinico has exhausted her administrative

remedies with regard to her ADA claims against Defendant Tylwalk.  As the

Commonwealth Defendants acknowledge, Sinico named the Lebanon County

Court of Common Pleas in her EEOC complaint but did not name Tylwalk. (Doc. 37 at 12.) The Commonwealth Defendants argue that this is not sufficient for Sinico to exhaust her administrative remedies against Tylwalk, while Sinico argues that it is sufficient. (*Id.* at 12–13; Doc. 39 at 14–15.) This issue is indistinguishable from an issue that was considered by the United States District Court for the Western District of Pennsylvania in *Harter v. Cty. of Washington*, No. 11-CV-00588, 2012 WL 1032478 (W.D. Pa. Mar. 27, 2012).

In *Harter*, an employee of the Washington County Court of Common Pleas brought an EEOC charge alleging violations of the ADA, naming various county entities, but not naming the court's President Judge. *Id.* at *6. The employee subsequently filed suit in federal court, naming the President Judge as a defendant. *Id.* The judge moved to dismiss, arguing that the employee had not exhausted her administrative remedies because she had failed to name the judge in her EEOC complaint. *Id.* The court denied the motion to dismiss, finding that the judge had notice of the EEOC charges because they were brought against other county defendants and that the judge had a shared commonality of interest with the named defendants. *Id.* at *6–7.

The court here reaches the same conclusion that the court reached in *Harter*. As the President Judge of the Lebanon County Court of Common Pleas, Tylwalk had notice of Sinico's EEOC charge. In addition, Tylwalk shared a commonality

of interest with the court such that Sinico's exhaustion of administrative remedies as to the court also exhausted her administrative remedies as to Tylwalk. Accordingly, the Commonwealth Defendants' motion to dismiss for failure to exhaust administrative remedies is denied.

### E. Sinico Fails to State an FMLA Claim Upon Which Relief May Be Granted.

Finally, the court will address the Defendants' arguments that Sinico has failed to state an FMLA claim upon which relief may be granted. (*See* Doc. 37 at 14–15; Doc. 38 at 10–11.) Sinico's claims under the FMLA sound in interference (Count IV) and retaliation (Count V).

To state a claim for interference with benefits under the FMLA, a plaintiff must plead that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014)).

An employee is an eligible employee under the FMLA if she has been employed by her employer for at least twelve months and has worked at least 1,250 hours for the employer in the last twelve months. 29 U.S.C. § 2611(2)(A). An

employer is subject to the FMLA if it "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar years." *Id.* § 2611(3)(A)(i).

To state a claim for retaliation under the FMLA, a plaintiff must plead that "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Id.* at 152 n.6 (quoting *Ross*, 755 F.3d at 193).

Individual supervisors may be held liable as employers under the FMLA. *Haybarger Lawrence Cty. Adult Probation & Parole*, 667 F.3d 408, 415–17 (3d Cir. 2012). "[A]n individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." *Id.* at 417 (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)).

Here, Sinico fails to state a claim under the FMLA because she has failed to allege that she worked at least 1,250 hours in the twelve months proceeding her termination or that her employer employed at least 50 employees during the relevant time period. 29 U.S.C. § 2611; *see also, e.g.*, *Kiniropoulos v. Northampton Cty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 391–92 (E.D. Pa. 2013) (dismissing FMLA claim without prejudice where employee failed to allege that she worked at least 1,250 hours during relevant period or that her employer

employed at least 50 employees).  Although Sinico's third amended complaint alleges that the Lebanon County Court of Common Pleas employs at least 15 employees, *see* Doc. 34 ¶ 37, this allegation is not sufficient to infer that the employer employed at least 50 employees, which is the standard for an employer to be subject to the FMLA.   Accordingly, Sinico's FMLA claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss (Docs. 35–36) are granted in part and denied in part.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: February 3, 2020